November 15, 2006

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODNEY & PATRA PARKER                    CIVIL ACTION

VERSUS                                   NO. 06-4156

LEXINGTON INSURANCE CO., ET AL.          SECTION "A"(1)

## ORDER AND REASONS

Before the Court are a **Motion to Dismiss (Rec. Doc. 6)** filed by defendant Bill Mark Bubrig and a **Motion to Remand (Rec. Doc.12)** filed by plaintiffs Rodney Parker and Patra Parker.  Both motions are opposed, and are before the Court on the briefs without oral argument.  For the reasons that follow, the motion to dismiss is GRANTED and the motion to remand is DENIED.

**I.    BACKGROUND**

Plaintiffs filed this suit in state court against Lexington Insurance Co. and Bill Mark Bubrig after their property was destroyed by Hurricane Katrina.  Plaintiffs claim that the "total loss" was due to the combined effects of wind and flooding. (Pet. ¶ 3).  Plaintiffs allege that Lexington has refused to pay the policy limits on their homeowner's claim pursuant to La. R.S. 22:695, Louisiana's Valued Policy Law.  (Pet. ¶ 5).

In a separate and unrelated claim Plaintiffs allege that

Bubrig was their insurance "agent" and that he led them to believe that their *flood* coverages were sufficient. (Id. ¶ 9). In the original complaint Plaintiffs alleged that they were underinsured for flood-related damages and that Bubrig never told them that the coverages they had would not cover the full value of their home. (Id. ¶ 10). Additionally, Plaintiffs asserted that Bubrig failed to advise them regarding private flood insurance in excess of the amount available under the NFIP. (Id. ¶ 9). Plaintiffs and Bubrig are all citizens of Louisiana.

Lexington removed the suit to this Court asserting diversity jurisdiction and alleging that Plaintiffs had fraudulently joined Bubrig to defeat federal jurisdiction. Plaintiffs move to remand the case to state court and Bubrig seeks dismissal of the claims against him.

## II.  DISCUSSION

The district courts of the United States are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. 2611, 2616–17 (2005) (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). Subject matter jurisdiction can never be forfeited or waived. Arbaugh v. Y & H Corp., No. 04-944, slip op. at 12 (Feb. 22, 2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). Courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from a

party.  Id. (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)).  The burden of establishing subject matter jurisdiction in federal court rests with the party seeking to invoke it.  St. Paul Reinsur. Co. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998) (citing Gaitor v. Penninsular & Occidental Steamship Co., 287 F.2d 252, 253-54 (5th Cir. 1961)).

Fraudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003) (citing Griggs v. State Farm Lloyds, 181 F.3d 694, 698 (5th Cir. 1999)).  The standards for resolving a Rule 12(b)(6) challenge and determining fraudulent joinder are similar.  Ross v. Citifinancial, Inc., 344 F.3d 458, 462 (5th Cir. 2003) (citing Travis, 326 F.3d at 648).  However, the scope of inquiry for fraudulent joinder is broader than that for Rule 12(b)(6) because for a fraudulent joinder analysis the court's review is not limited to the pleadings.  See id. at 462-63.  Rather, the court may "pierce the pleadings" and consider summary judgment-type evidence.  Id. at 463 (citing Travis, 326 F.3d at 648-49).  The burden of persuasion on those claiming fraudulent joinder is a heavy one.  Ross, 344 F.3d at 462 (citing Travis, 326 F.3d at 648).  All factual inferences are to be drawn in plaintiff's favor and all ambiguities of state law are to be

resolved in favor of plaintiff.  Id.

At issue here is the second of the two means for establishing fraudulent joinder, i.e., Plaintiffs' inability to establish a cause of action against Bubrig in state court.  In order to determine if the plaintiff can establish a cause of action against the non-diverse party in state court, the court must decide whether there is arguably a reasonable basis for predicting that state law might impose liability.  Ross, 344 F.3d at 462 (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)).  This means that there must be a *reasonable* possibility of recovery, not merely a theoretical one.  Id.

Lexington alleges fraudulent joinder based upon the contention that Plaintiffs have no cause of action against Bubrig under Louisiana law.[1]  Lexington's argues that Plaintiffs have no cause of action against Bubrig for his alleged failure to advise them to purchase additional limits of liability.  Lexington argues that Louisiana law does not impose a duty on an insurance agent to determine whether a customer is underinsured.

In opposition, Plaintiffs argue that the duty imposed on insurance agents under Louisiana law includes a duty to advise

---

[1] Lexington also argues preemption and misjoinder in support of its contention that Bubrig has been fraudulently joined. Because the Court finds that Plaintiffs have no cause of action against Bubrig under Louisiana law, the Court declines to address the remaining two arguments.

4

insureds regarding recommended coverage and to inform them of
policy limits and exclusions.  Plaintiffs argue that Louisiana
law also imposes a duty to advise insureds to purchase insurance
with higher limits.  Plaintiffs argue that Lexington is asking
this Court to limit the duties imposed on insurance agents under
Louisiana law with no suggestion by a Louisiana court that any
such limit is appropriate.

The Louisiana Supreme Court has long-recognized that an
insurance agent who undertakes to procure insurance for another
owes an obligation to his client to use reasonable diligence in
attempting to place the insurance requested and to notify the
client promptly if he has failed to obtain the requested
insurance.  Karam v. St. Paul Fire & Marine Ins. Co., 281 So. 2d
728, 730 (La. 1973).  The client may recover from the agent the
loss he sustains as a result of the agent's failure to procure
the desired coverage if the actions of the agent warranted an
assumption by the client that he was properly insured in the
amount of the desired coverage.  Id. at 730-31 (citations
omitted).  To recover for losses resulting from such failure, the
plaintiff must prove (1) an undertaking or agreement by the
insurance agent to procure insurance, (2) failure of the agent to
use reasonable diligence in attempting to place the insurance and
failure to notify the client promptly if he has failed to obtain
the insurance, and (3) action by the agent warranting the

client's assumption that the client was properly insured.
<u>Offshore Prod. Contrs., Inc. v. Republic Underwriters Ins. Co.</u>,
910 F.2d 224, 229-30 (5th Cir. 1990) (citations omitted); <u>Taylor</u>
<u>v. Sider</u>, 765 So. 2d 416, 418 (La. App. 4th Cir. 2000) (citing
<u>Opera Boats, Inc. v. Continental Underwriters, Ltd.</u>, 618 So. 2d
1084, 1085-86 (La. App. 1st Cir. 1993)).

In <u>Karam</u>, <u>supra</u>, the insured had specifically requested
$100,000 in coverage but the agent had negligently procured only
$10,000 in coverage.  <u>Id.</u> at 729.  The Supreme Court affirmed the
district court's judgment in favor of Karam and against the agent
because the agent's negligence in procuring the requested
coverage caused Karam to be underinsured when he attempted to
make a claim.  <u>Id.</u> at 731.

In the wake of <u>Karam</u>, the appellate courts of Louisiana have
considered the duty of an insurance agent to the insured numerous
times.  For instance, in <u>Taylor v. Sider</u>, the Fourth Circuit
Court of Appeal held that an insurance agent has a duty to inform
the insured when certain limiting provisions of Louisiana law
might induce the insured to opt for a different type of coverage.
765 So. 2d 416, 419 (La. App. 4th Cir. 2000).  In <u>Taylor</u>, the
plaintiffs alleged that the agent had failed to advise them that
by structuring their policies differently they could have avoided
the consequences of Louisiana's UM anti-stacking provisions.  <u>Id.</u>
at 418.

6

Similarly, in <u>Zinsel Co. v. J. Everett Eaves, Inc.</u>, the Fifth Circuit Court of Appeal recognized that an agent has a duty to keep his client abreast of pertinent changes in available flood insurance.  749 So. 2d 798, 800 (La. App. 5th Cir. 1999). At issue in that case was whether the agent had a duty to inform a client who had opted to purchase maximum flood coverage that Congress had raised the maximum available limits.  The court ultimately concluded that the agent had not breached his duty but the court nevertheless did recognize that the duty to inform the client was owed under the facts.  <u>Id.</u> at 800-01.

In <u>Durham v. McFarland, Gay, & Clay, Inc.</u>, the Fourth Circuit Court of Appeal upheld liability against an insurance agent who failed to comply with an insured's express request to transfer flood coverage from an existing property to a second residence that the insured had acquired.  527 So. 2d 403, 407 (La. App. 4th Cir. 1988).  The Fourth Circuit went on to conclude that even absent a specific request to transfer coverage, the agent had a duty to advise the insured of the need to secure flood coverage for the property.  <u>Id.</u>  The Fourth Circuit explained that <u>Karam</u> is not so narrow as the duties specifically enumerated in that case, and that <u>Karam</u> does not support the inference that an agent is a "mere order taker."[2]  <u>Id.</u> at 405.

_____

[2] <u>Durham</u> dealt specifically with an insurance broker as opposed to an insurance agent.  Courts have recognized that the duties applicable to brokers and agents is the same where there

Although the foregoing cases are by no means exhaustive of the appellate court decisions, two common threads emerge in those cases in which an insured states a cause of action against the agent.  The first common thread is demonstrated by cases like Karam and Durham where the agent has negligently failed to procure the coverage requested by the insured.  See also Offshore Prod. Contrs., 910 F.2d at 229-30 (agent misrepresented to the insured the scope of coverage being purchased).  The second common thread arises in those cases like Zinsel and Taylor where the courts expanded upon Karam to find that an agent owes a duty to the insured to affirmatively inform the client of certain information, e.g., changes in the federal flood policy and the esoteric aspects of Louisiana insurance law that might affect the type of policy selected by the insured.  See also Richmond v. Chubb Group of Ins. Cos., No. 06-3973, 2006 WL 2710566 (E.D. La. Sept. 20, 2006) (Africk, J.) (agent failed to inform insured that excess flood coverage was available in the private insurance market).  In all of these cases the "advice" that the agent had an affirmative duty to give the insured pertained to aspects of the policies or aspects of insurance law that were not within the knowledge generally held by a lay person.  In other words, the information that the agent had a duty to provide was something

is an agreement to procure insurance.  Crayton v. Sentry Ins. Co., 612 So. 2d 767, 771 (La. App. 1st Cir. 1993) (citations omitted).

about which the agent had superior knowledge given his insurance expertise, and the agent's specific knowledge of the insureds' individual situation triggered that duty to disclose.

Plaintiffs in the instant case allege that Bubrig had a duty under Louisiana law to advise them to purchase flood coverage with higher limits and that his failure to do so caused them to be underinsured.[3]  Plaintiffs' claim clearly does not fall within the first thread of cases because Bubrig procured for Plaintiffs the specific coverage that they requested.  Moreover, Plaintiffs' claim against Bubrig does not fall within the second thread of cases because it does not involve a failure to give advice about an area in which Bubrig had superior knowledge given his insurance expertise.  In fact, Plaintiffs were in a far better position than Bubrig to know that their property was worth more than the coverage limits that they selected.  The facts alleged do not suggest that Bubrig had any way of knowing that Plaintiffs' property was actually worth more than the value they themselves attached to it.  Thus, what Plaintiffs are in fact claiming is that Louisiana law required Bubrig to procure an independent appraisal of their property prior to allowing them to

---

[3] Originally Plaintiffs were also urging that they were underinsured because Bubrig failed to inform them of the availability of private flood insurance in excess of the federal limits.  The record establishes that Plaintiffs did not elect to procure the maximum flood limits under federal law so Bubrig had no duty to advise them about excess flood insurance.

9

renew their policy.  Louisiana law imposes no such duty.

Plaintiffs argue that <u>Karam</u> and the body of appellate caselaw applying it do not embody the exclusive duties that an agent owes to the insured.  Therefore, according to Plaintiffs, there is arguably a reasonable basis for predicting that state law might impose liability on Bubrig on the facts alleged.  The Court does not agree.  The jurisprudence does not support the inference that any Louisiana court would apply Karam so broadly as to conclude that Bubrig was obligated to appraise Plaintiffs' property.  In fact, in the single Louisiana case to address the issue, the Second Circuit concluded that an agent has no duty to counsel an insured on policy limits.  <u>Smith v. Millers Mutual Ins. Co.</u>, 419 So. 2d 59, 64-65 (La. App. 2d Cir. 1982).[4]  And in <u>Dobson v. Allstate Insurance Co.</u>, Judge Vance recently noted that no Louisiana case imposes "a duty on an agent to spontaneously identify a client's needs and advise him as to whether he is underinsured."  Nos. 06-1064 & 06-1585, 2006 WL 2078423, at *10 (E.D. La. July 21, 2006).

In sum, the Court concludes that Lexington has met its burden of establishing that there is no reasonable basis for predicting that state law might impose liability on Bubrig under the facts alleged.  As such, the Court can ignore Bubrig's

---

[4] <u>Smith</u> dealt with an automobile policy but the reasoning applies equally well to this case.

10

citizenship when determining whether it has subject matter jurisdiction over this case.  Plaintiffs are citizens of Louisiana and Lexington is a citizen of Delaware and Massachusetts.  The parties are therefore completely diverse.  Further, the amount in controversy exceeds $75,000.  Plaintiffs are seeking the policy limits on their homeowner's insurance and the notice of removal clarifies that the policy limits far exceed $75,000.  The case was properly removed.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Remand (Rec. Doc.12)** filed by plaintiffs Rodney Parker and Patra Parker should be and is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Dismiss (Rec. Doc. 6)** filed by defendant Bill Mark Bubrig should be and is hereby **GRANTED**.  Plaintiffs' complaint against this defendant is dismissed.

*  *  *  *  *  *  *  *

11